UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA JACKSON,

          Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.

Civil Action No.: 17-10060
Honorable George Caram Steeh
Magistrate Judge Elizabeth A. Stafford

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14, 15]**

Plaintiff Barbara Jackson appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Jackson's motion [ECF No. 14] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

A. Background and Disability Applications

Jackson was born on April 14, 1951, making her 62 years old on her alleged onset date of November 1, 2013. [ECF No. 11-3, Tr. 60]. She submitted applications for disability benefits in February 2014 and was insured for DIB purposes through December 31, 2014. [*Id.*; ECF No. 11-5, Tr. 135-44]. She has a high school education and prior work history as a caregiver. [ECF No. 11-6, Tr. 164, 213]. She alleged disability due to being blind in one eye, but also suffered from the medically determinable impairments of "hypertension, narrowing at L5-S1 and anterior spurring, s/p right cataract removal, and hypothyroid." [ECF No. 11-2, Tr. 32; 11-3, Tr. 60; 11-6, Tr. 163].

After the Commissioner denied her disability application initially, Jackson requested a hearing, which took place in October 2015, during which she and a vocational expert (VE) testified. [ECF No. 11-2, Tr. 41-59]. In a December 30, 2015, written decision, the ALJ found Jackson to be not disabled. [*Id.*, Tr. 30-35]. The Appeals Council denied review,

making the ALJ's decision the final decision of the Commissioner, and Jackson timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Jackson was not disabled. At the first step, she found that Jackson had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 32]. However, the ALJ found at the second step that Jackson had no medically determinable impairments, either alone or in combination, that met the qualifications for a severe impairment. [*Id.*, Tr. 32-35]. Thus, no further analysis was required for the ALJ to conclude that Jackson was not under a disability. [*Id.*, Tr. 35].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Jackson argues that the ALJ failed to consider all of the relevant objective medical evidence and subjective complaints in concluding that she had no severe impairments, and that the ALJ should be bound by her statement during the hearing that Jackson would be granted disability benefits. These arguments have no merit and the ALJ's decision should be affirmed.

**B.**

A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). Basic work activities are "abilities and aptitudes necessary to do most jobs." §§ 404.1522(b), 416.922(b) (examples listed). The severe impairment requirement at step two of the process is a "*de minimis* hurdle" that serves to screen out groundless Social Security claims. *Higgs v. Bowen*, 880 F.2d 860, 862–63 (6th Cir. 1988) (citations omitted). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id*. at 862. But the claimant bears the burden of showing the severity of their medically determinable impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Here, the ALJ found that Jackson did not meet her burden of demonstrating that she suffered from a severe impairment. [ECF No. 11-2, Tr. 32-35].

Jackson claims that her hypertension, lumbar spine issues, and degenerative disc disease and osteoarthritis of both knees should have been found to be severe impairments. Jackson begins by noting that she was diagnosed with hypertension in July 2014 and complained on three occasions within the span of a year of dizziness. [ECF No. 11-7, Tr. 247-

6

49, 255, 273]. However, Jackson *denied* dizziness on multiple occasions, including one cited by her in support of her impairment. [*Id.*, Tr. 235, 248]. In the latest cited record she classified her dizziness as "on/off," though she testified to dealing with dizziness "every day." [*Id.*, Tr. 273; ECF No. 11-2, Tr. 49]. She also testified that she was not taking medication for the issue any longer and that her current doctor thinks that "it's the way I get up or whatever that causes the dizziness." [ECF No. 11-2, Tr. 50-51]. In August 2015, her doctor found her complaints of dizziness to be "subjective[ ] without any obvious evidence of hypotension or neurological problem." [ECF No. 11-7, Tr. 275]. He stated that it could be caused by "antihypertensive drugs causing momentary postural hypotension." [*Id.*]. Her doctor also found that her hypertension was controlled and that she denied all symptoms referable to hypertension, despite not exercising and not adhering to a low salt diet. [*Id.*, Tr. 273]. The ALJ concluded that there was "insufficient information to suggest [that] dizziness or hypertension significantly limits her ability to work," a finding that Jackson presents no reason to disturb. [ECF No. 11-2, Tr. 34].

Next, Jackson takes issue with the ALJ's analysis relating to her lumbar spine. The ALJ's analysis of her lumbar spine accurately described a July 2014 imaging report as stating, "Examination of the lumbar spine in

7

multiple projections is negative for fracture, dislocation or bony destruction. There is narrowing of L5-S1. There is anterior spurring." [ECF No. 11-7, Tr. 252]. The ALJ also reviewed Jackson's treatment records with her primary care physician, Kamran Sheikh, M.D. [ECF No. 11-2, Tr. 34]. Those records state that Jackson was "in no acute distress" and "walking unassisted" twice in July with no mention of back pain. [*Id.*, citing ECF No. 11-7, Tr. 235, 248-49]. In March 2015, Dr. Sheikh sent Jackson a letter stating that he could no longer provide her with medical care because he was no longer comfortable being her primary care doctor. [ECF No. 11-7, Tr. 256].

In June 2015, Jackson saw Ashok Kumar Bansal, M.D., complaining of low back pain without radiation into her legs. [*Id.*, Tr. 276]. Dr. Bansal prescribed Tramadol for her pain, but also noted that her back was symmetric with no curvature, normal range of motion, and no costovertebral angle tenderness. [*Id.*, Tr. 278]. She also had a normal gait and reflexes. [*Id.*]. Jackson returned to Dr. Bansal in August 2015 with no complaints of back pain and the same results as before upon examination. [*Id.*, Tr. 280-82].

Jackson takes issue with the ALJ framing of her lumbar spine imaging as "very mild findings," noting that the word "mild" appears

8

nowhere within the imaging records. [ECF No. 11-2, Tr. 34]. But the ALJ accurately described the actual wording of the imaging, as well as the medical treatment of Jackson's lumbar spine. [*Id.*]. Jackson also accuses the ALJ of mischaracterizing Dr. Sheikh's discharge letter—a discharge that the ALJ described as caused by Jackson's "drug seeking behavior." [ECF No. 11-2, Tr. 34]. The ALJ's interpretation of Dr. Sheikh's letter likely derived from a Michigan Automated Prescription System (MAPS) report that followed the letter. [ECF No. 11-7, Tr. 257-58]. Although the MAPS report was run in Jackson's name, the patient name for the prescriptions delineated on the report were in the name of "Betty Jackson," who Jackson says is her twin sister. [*Id.*; ECF No. 14, PageID 358]. Perhaps either Dr. Sheikh or the ALJ erred in believing that the MAPS report had any bearing on Jackson's drug use, but the Commissioner is correct in concluding that this error had no bearing on the ALJ's analysis of her back pain being nonsevere. Jackson fails to counter the ALJ's findings that her physical exams were unremarkable, that she had no emergency treatment for pain, that the doctors' findings regarding her back condition were minimal, and that her treatment was minimal. [ECF No. 11-2, Tr. 34]. She does not sustain her burden of demonstrating that she suffers from a severe impairment of her lumbar spine.

Jackson also claims that her diagnoses of degenerative joint disease and osteoarthritis of both knees should also be considered severe impairments. [ECF No. 14, citing ECF No. 11-7, Tr. 278, 285]. But a mere diagnosis says nothing about the severity of the condition, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), and she cites to no objective evidence of resulting limitations, or even complaints of knee pain to doctors, to support her claim of a severe impairment. The cited records only reference patellofemoral crepitus, with no mention of pain or other symptoms, and with a normal gait. [*Id.*]. Other records show that she denied joint pain or swelling to her physicians, had no related treatment for the condition, and walked unassisted with normal extremities, gait, and sensation. [*Id.*, Tr. 235, 248, 278, 280-86].

For these reasons, Jackson has failed to sustain her burden of demonstrating that any of her alleged impairments are severe, and the ALJ's decision should be affirmed.

## C.

Jackson's final argument is that the decision should be remanded because the ALJ stated at hearing, "I'm going to grant your benefits back to the onset date of 2013." [ECF No. 11-2, Tr. 58]. The Commissioner responds with authority from other jurisdictions indicating that such a

statement at hearing cannot be binding because it does not follow the requirements of the applicable regulations for entering a fully favorable oral decision into the record at hearing. See *Fahey v. Colvin*, No. 3:13-CV-02175, 2014 WL 6473210, at *4 (M.D. Pa. Nov. 18, 2014) (citing 20 C.F.R. § 404.953(b)), *Smith v. Astrue*, No. 2:08cv452, 2009 WL 4067393, at *4 (E.D. Va. Nov. 20, 2009) (citing § 404.953(a)). Section 404.953(a) requires the ALJ to prepare a written decision, and Section 404.953(b) requires that, if a fully favorable oral decision is entered into the record of the hearing proceedings, the ALJ must also "include in the record, as an exhibit entered into the record at the hearing, a document that sets forth the key data, findings of fact, and narrative rationale for the decision." The same requirements apply to SSI decisions. 20 C.F.R. § 416.1453.

In *Smith*, the court was "not wholly convinced that the ALJ's statements on the record are inconsistent with [her] final written decision." *Smith*, 2009 WL 4067393 at *3. The same conclusion applies here; the ALJ may have been referring only to the application of benefits in the event that the ALJ found in her favor. Jackson argues that the *Fahey* and *Smith* are out of circuit and therefore not binding. But Jackson "has failed to cite any statute, regulation, or case mandating that the ALJ's subsequent written decision must be consistent with prior oral statements." *Id.* at *4.

11

And Sections 404.953 and 416.1453 *are* binding, and they render a conclusion that Jackson's reliance on the oral statement during the hearing is without merit.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Jackson's motion for summary judgment be [ECF No. 14] be **DENIED**; that the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

                                          s/Elizabeth A. Stafford
                                          ELIZABETH A. STAFFORD
Dated: January 16, 2018          United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 16, 2018.

s/Marlena Williams<br>
MARLENA WILLIAMS<br>
Case Manager

13